UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| KARENA A. FENG,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>Defendants. | Case No. 19-cv-06877-LB<br><br>**ORDER GRANTING MOTIONS TO DISMISS**<br><br>Re: ECF Nos. 11, 14, 18, 21 |

## INTRODUCTION

Pro se plaintiff Karena A. Feng has been diagnosed with a mental disorder, and at one point (when she was in a maternity recovery ward), a psychiatrist evaluated her and hospitalized her involuntarily under California and Welfare Institutions Code § 5150. Ms. Feng claims that this placement occurred so that the Department of Family and Child Services ("DFCS") could put her children up for adoption or sex trafficking. Ms. Feng sued defendants the County of Santa Clara, the City and County of San Francisco, psychiatrist Anna Piotrowski, M.D., Santa Clara social workers Mayra Alvarez and Brian Hawkinson, San Francisco social worker Amy Yim, California Superior Court Judge Amber Rosen, and Ms. Feng's court-appointed attorney Arthur Gee-Yeh Tan, alleging that the defendants are collectively engaging in a conspiracy against her and are liable to her for at least $650 million in damages.

Judge Rosen, Dr. Piotrowski, Mr. Tan, Ms. Yim, and the City and County of San Francisco move to dismiss Ms. Feng's complaint. (The Santa Clara defendants — the County, Ms. Alvarez, and Mr. Hawkinson — have not yet appeared in this case or moved to dismiss.[1]) The court can decide the defendants' motions without oral argument. N.D. Cal. Civ. L.R. 7-1(b). The court grants the pending motions to dismiss. The court dismisses Ms. Feng's claims against Judge Rosen with prejudice and dismisses Ms. Feng's claims against Dr. Piotrowski, Mr. Tan, Ms. Yim, and the City and County of San Francisco without prejudice, meaning that the court gives Ms. Feng an opportunity to file an amended complaint. Ms. Feng must file an amended complaint that addresses the deficiencies the court identified in this order within 21 days (i.e., by January 16, 2020). If she does not do so, the court will dismiss her claims against Dr. Piotrowski, Mr. Tan, Ms.

---

[1] Ms. Feng first purported to serve the Santa Clara defendants on October 23 and 24, 2019. Proof of Service – ECF No. 9 at 6, 12, 14. Ms. Feng moved for entry of default against Ms. Alvarez and Mr. Hawkinson. Pls. Mots. for Default – ECF Nos. 22, 23, 34. Ms. Alvarez and Mr. Hawkinson specially appeared to oppose Ms. Feng's motions for default Alvarez and Hawkinson Opp'n to Pl. Mots. for Default – ECF No. 24; Alvarez Opp'n to Pl. Mot. for Default – ECF No. 35. All of the Santa Clara defendants also consented to magistrate-judge jurisdiction. Santa Clara Defs. Consent – ECF No. 28.

A defendant's specially appearing to oppose entry of default does not waive any defenses, including a defense of lack of service. *See, e.g.*, *Geiche v. City and Cty. of San Francisco*, No. C 08-3233 JL, 2009 WL 1948830, at *9 (N.D. Cal. July 2, 2009) (holding that specially-appearing defendants were not properly served with the summons or complaint, despite their specially appearing in the lawsuit to contest service).

Similarly, a defendant's consenting to magistrate-judge jurisdiction does not waive any defenses, including a defense of lack of service. *See Harper v. City of Cortez*, No. 14-cv-02984-KLM, 2015 WL 4113825, at *3 (D. Colo. July 8, 2015) (holding that defendants' consent to magistrate-judge jurisdiction did not waive service or jurisdiction defenses). To hold otherwise would put parties in the unfair position of being unable to consent to a magistrate judge without also having to waive defenses. *See id.*; *cf. Miller v. Wholesale Am. Mortg., Inc.*, No. 17-cv-05495-LB, 2018 WL 306714, at *4 (N.D. Cal. Jan. 5, 2018) (parties who want to consent to magistrate-judge jurisdiction should not have their consents unduly frustrated).

Ms. Feng purported to re-serve Mr. Hawkinson and Ms. Alvarez on December 19, 2019. Proof of Service – ECF No. 40. The Santa Clara defendants have not (yet) appeared in response to this renewed purported service.

In sum, all parties — even those who have not otherwise generally appeared — have consented to magistrate-judge jurisdiction, and the undersigned can decide the motions to dismiss. *Cf. Williams v. King*, 875 F.3d 500, 503–05 (9th Cir. 2017).

Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

Yim, and the City and County with prejudice, meaning that she will not be able to replead her claims against them.

## STATEMENT[2]

Construing her complaint liberally, Ms. Feng alleges the following.

Ms. Feng gave birth to a baby (her fourth child) in November 2018.[3] On November 26, Dr. Piotrowski entered Ms. Feng's maternity ward and said that "she just had another patient with postpartum depression or psychosis, and she doesn't want to bump into another one," or words to that effect.[4] Ms. Feng responded that she had nothing to do with another patient, that she had been delayed for discharge, and that she wanted to bring her newborn baby home to show the rest of her family.[5] Ms. Feng alleges that Dr. Piotrowski demanded that she take some type of psychedelic drug and said, "If Plaintiff does not take it, then [Dr. Piotrowski] would call CPS [Child Protective Services] to take the children away, throw me into the ward, do not disclose the address so no one can save me and that I cannot see another day's light, I will lose my children forever," or words to that effect.[6] Ms. Feng asked for a second opinion, to which Dr. Piotrowski replied, "NO!"[7] Ms. Feng alleges that Dr. Piotrowski yelled that "she IS the law," or words to that effect.[8] Ms. Feng alleges that Dr. Piotrowski wrote in Ms. Feng's medical chart that all staff must follow Dr. Piotrowski in her capacity as the "boss" and the "law."[9]

At some point between November 26 and November 28, 2018, a medical provider involuntarily placed Ms. Feng in a psychiatric ward at the Crestview Psychiatric Facility in Santa

---

[2] Unless otherwise stated, the facts in the Statement are allegations from the Complaint and are presumed to be true for the purposes of this order.

[3] *See* Compl. – ECF No. 1 at 6 (¶¶ 18, 20).

[4] *Id.* (¶ 19).

[5] *Id.* (¶ 20).

[6] *Id.* at 6–7 (¶ 21).

[7] *Id.* (¶ 22).

[8] *Id.* (¶ 23).

[9] *Id.* (¶ 24).

Clara.[10] The facility discharged Ms. Feng on November 28, 2018.[11] Syed Munir, MD, signed Ms. Feng's discharge papers.[12] The typed notes on the discharge papers say that Ms. Feng was diagnosed with an "unspecified mental disorder."[13] Handwritten notes on the discharge papers cross out Ms. Feng's diagnosis of "mental disorder" and instead say "psychosis disorder."[14]

On November 26, Dr. Piotrowski called Mayra Alvarez, a DFCS social worker, to remove Ms. Feng's children LF, KF, MF, and RSF from her home.[15] The police arrived at Ms. Feng's home and found Ms. Feng's children there with another couple, the Shiangs.[16] Ms. Feng alleges that Ms. Alvarez lied and reported that the children were at Ms. Feng's home by themselves (instead of with the Shiangs) and "deliberately arranged the conditions, so when [sic] such conditions looked worse than they really were."[17] Ms. Feng alleges that Ms. Alvarez "removed her prizes — an Asian baby in high demand for adoption and a 13-year-old girl ideal to medicate in preparation for sex trafficking."[18]

On November 28, 2018, Santa Clara DFCS social worker Brian Hawkinson filed an unspecified petition against Ms. Feng.[19] In December 2018, Mr. Hawkinson filed a second petition.[20] Mr. Hawkinson claimed, among other things, that "the mother [Ms. Feng] was

---

[10] *Id.* at 6 (¶ 15), 10 (¶ 36); Compl. Ex. A (psychiatrist discharge summary) – ECF No. 1 at 38–39.

[11] Compl. Ex. A (psychiatrist discharge summary) – ECF No. 1 at 38–39.

[12] *Id.*

[13] *Id.*

[14] *Id.*; *see also* Compl. – ECF No. 1 at 7 (¶ 25) (alleging that all of "the staff" — presumably staff at the maternity ward and/or staff working with Dr. Piotrowski — agreed that Ms. Feng had psychosis).

[15] Compl. – ECF No. 1 at 8 (¶ 27).

[16] *Id.* (¶ 28).

[17] *Id.*

[18] *Id.* at 8–9 (¶ 29); *see also id.* at 6 (¶ 16) ("Upon information and belief, LF and RSF were ideal ages for adoption and sex trafficking which are big money makers for the [racketeering] Enterprise [of the defendants]."). Ms. Feng does not allege that any of her children were actually put up for adoption or sex trafficking. Instead, she alleges that they initially were placed in foster homes, *id.* at 9 (¶ 33), and then ultimately were placed with the Shiangs, *see id.* at 12 (¶ 42).

[19] *Id.* at 10 (¶ 36); *see id.* at 4 (¶ 10), 12 (¶ 40), 13 (¶ 45), 15 (¶ 59), 16 (¶ 62) (alleging that Mr. Hawkinson is a Santa Clara DFCS employee).

[20] *Id.* at 10 (¶ 36).

hallucinating and paranoid."[21] Ms. Feng alleges that Mr. Hawkinson "doctored" his petitions and claims that Mr. Hawkinson was the one who crossed out "mental disorder" and wrote "psychosis disorder" on her discharge papers.[22]

Ms. Feng does not clearly allege where Mr. Hawkinson filed his petition, but construing her complaint liberally, it appears that Mr. Hawkinson may have filed his petition before California Superior Court Judge Amber Rosen.[23] The court appointed Arthur Gee-Yeh Tan as Ms. Feng's attorney.[24] Ms. Feng alleges that Mr. Tan told her, "I will handle this the right way," instructed her, "do not say a thing" in court or "you won't get your kids back," and demanded that she receive therapy.[25] Mr. Tan told the court that Ms. Feng submitted to everything Mr. Hawkinson wrote in his petition.[26]

The petition and court proceeding appear to have resulted in Santa Clara County's placing Ms. Feng's children LF, KF, MF, and RSF initially in foster homes.[27] Ms. Feng alleges that the foster homes were "inhumane" and "abusive."[28] Ms. Feng alleges that Mr. Hawkinson demanded that Ms. Feng consent to LF's, KF's, MF's, and RSF's adoption.[29] Ms. Feng alleges that Mr. Hawkinson "mistreated and tortured" LF, KF, MF, and RSF and "manipulated the situation" to have LF, KF, MF, and RSF categorized with mental issues, when in fact they do not have any

---

[21] *Id.* (¶ 34).

[22] *Id.* at 10–11 (¶¶ 36–38); *see* Compl. Ex. A (psychiatrist discharge summary) – ECF No. 1 at 38–39.

[23] Ms. Feng does not clearly set forth what she is alleging Judge Rosen did. *See* Compl. – ECF No. 1 at 21 (¶ 75) (alleging that Judge Rosen had "no subject matter jurisdiction at all," without specifying what the underlying matter was), 32–3 (¶¶ 117–19) (alleging that Judge Rosen violated the Fourteenth Amendment without specifying what the underlying matter was). The court construes Ms. Feng's complaint liberally and assumes that Judge Rosen presided over Mr. Hawkinson's petition and any ensuing proceedings, because if Judge Rosen did not preside over these proceedings, then Ms. Feng alleges no cognizable facts against Judge Rosen at all.

[24] *Id.* at 9 (¶ 30).

[25] *Id.* at 9 (¶ 31), 10 (¶ 34).

[26] *Id.* at 9 (¶¶ 30–31), 10 (¶ 34).

[27] *Id.* at 9 (¶ 33).

[28] *Id.*

[29] *Id.* at 11 (¶ 39).

ORDER – No. 19-cv-06877-LB    5

mental issues.[30] Ms. Feng alleges that Mr. Hawkinson did not allow her to telephone or video chat with her children and that in-person visitation times were "contaminated" as, on multiple occasions, she would wait to meet with her children but her children were not brought to the visitation location.[31]

In March 2019, Mr. Hawkinson approved LF, KF, MF, and RSF to stay with the Shiangs at the Shiangs' home in San Francisco.[32] Because Ms. Feng's case was not in San Francisco, the Shiangs had to travel to Ms. Feng's residence or to another location that Mr. Hawkinson would specify in order for Ms. Feng to have "visitation" (presumably with her children).[33] Mr. Hawkinson told Ms. Feng that she had to live in San Francisco in order to have her file transferred to San Francisco.[34]

Ms. Feng planned to move to a "shared" living space in San Francisco.[35] Amy Yim, a San Francisco DFCS worker, did not approve of Ms. Feng's shared location and insisted that she live by herself.[36] Ms. Feng alleges that Ms. Yim has been telling Ms. Feng's children, friends, and lawyer, and teachers and police officers, that Ms. Feng is schizophrenic.[37]

Ms. Feng alleges that Ms. Yim concocted an "entrapment scheme" against her.[38] On August 23, 2019, Ms. Feng's children LF, KF, MF, and RSF had an appointment for immunization shots.[39] Ms. Feng alleges that her children were not allowed to go to their appointment because Ms. Yim said so.[40] Ms. Feng alleges that her children therefore had to schedule a nighttime

---

[30] *Id.* at 11–12 (¶ 40).
[31] *Id.* at 12 (¶ 43).
[32] *Id.* at 12 (¶ 42), 13 (¶ 45).
[33] *Id.* at 13 (¶ 46).
[34] *Id.*
[35] *Id.* (¶ 47).
[36] *Id.* (¶ 48); *see id.* at 14 (¶ 51), 15 (¶¶ 56, 59), 16 (¶¶ 61–62) (alleging that Ms. Yim is a San Francisco DFCS employee).
[37] *Id.* at 14 (¶ 50).
[38] *Id.* (¶ 54).
[39] *Id.*
[40] *Id.* at 14–15 (¶ 54).

appointment and that Ms. Yim then called the police to place her under arrest for not having her children home earlier.[41] On September 24, 2019, Ms. Yim filed a juvenile-dependency-court petition.[42]

Ms. Feng alleges that Mr. Hawkinson is a DFCS "fixer" and that Ms. Yim is the DFCS "master fixer" conspiring against her.[43]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

---

[41] *Id.* at 15 (¶ 54).

[42] *Id.* at 14 (¶ 53).

[43] *Id.* at 11–12 (¶¶ 38–40), 13–14 (¶¶ 45, 48–49, 51), 15 (¶¶ 56, 59), 16 (¶¶ 61–62).

ORDER – No. 19-cv-06877-LB                    7

plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

"A pro se complaint must be 'liberally construed,' since 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (citations and internal quotation marks omitted). But "leave to amend may be denied when a plaintiff has demonstrated a 'repeated failure to cure deficiencies by amendments previously allowed.'" *Id.* at 1183 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). "It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (citing *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983)).

## ANALYSIS

Ms. Feng brings three claims: (1) a claim against the County Santa Clara, the City and County of San Francisco, Mr. Hawkinson, Ms. Alvarez, and Judge Rosen for violation of 42 U.S.C. § 1983, (2) a claim against the County of Santa Clara, the City and County of San Francisco, Dr. Piotrowski, Mr. Hawkinson, Ms. Alvarez, Ms. Yim, Judge Rosen, and Mr. Tan for violation of the Fourteenth Amendment, (3) a claim against the County of Santa Clara, the City and County of San Francisco, Dr. Piotrowski, Mr. Hawkinson, Ms. Alvarez, Ms. Yim, Judge Rosen, and Mr. Tan for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq.[44]

---

[44] *Id.* at 33–35 (¶¶ 121–26). Ms. Feng labels her claims "Count One," "Count Two," and "Count Four." There is no "Count Three."

ORDER – No. 19-cv-06877-LB                    8

## 1. Ms. Feng's Claims Against Judge Rosen Are Barred by the *Rooker–Feldman* Doctrine and Judicial Immunity

### 1.1 The *Rooker–Feldman* Doctrine

"The *Rooker–Feldman* doctrine instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Id.* (citing *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)). "'It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court.'" *Id.* at 778 (quoting *Noel*, 341 F.3d at 1163). "A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal." *Noel*, 341 F.3d at 1158. "As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Id.* "[A] federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Cooper*, 704 F.3d at 779 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S., 1, 25 (1987) (Marshall, J., concurring)).

Ms. Feng's claims against Judge Rosen are, at most, that Judge Rosen applied incorrect evidentiary standards in a state-court proceeding and thereby deprived her of due process.[45] To evaluate Ms. Feng's claims, the court would need to review Judge Rosen's state-court legal determinations, which it may not do under the *Rooker–Feldman* doctrine.

Ms. Feng argues that the *Rooker–Feldman* doctrine does not apply because she is seeking money damages against Judge Rosen.[46] Not so. Ms. Feng's claims for damages against Judge Rosen for her state-court rulings are "inextricably intertwined" with a review of the rulings

---

[45] *Id.* at 21 (¶ 75).

[46] Pl. Opp'n to Rosen Mot. – ECF No. 32 at 5.

1  themselves. *Cf. Cooper*, 704 F.3d at 782 ("[Plaintiff]'s prayer for relief in the form of monetary and punitive damages . . . [that] is contingent upon a finding that the state court decision was in error. . . . is precisely th[e] sort of horizontal review of state court decisions that the *Rooker–Feldman* doctrine bars."). The *Rooker–Feldman* doctrine therefore applies and bars Ms. Feng's claims against Judge Rosen.

### 1.2 Judicial Immunity

"It is well established that state judges are entitled to absolute immunity for their judicial acts." *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004) (citing *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967)). Absolute judicial immunity extends to suits against a judge with respect to judicial acts even when a plaintiff purports to name the judge as a defendant in her personal or individual (as opposed to official) capacity. *Cf. Romano v. Bible*, 169 F.3d 1182, 1185–86 (9th Cir. 1999) (holding that quasi-judicial defendants named "in their *personal* capacities" nonetheless were entitled to absolute judicial immunity because "[t]he Supreme Court has adopted a 'functional approach' to determine whether an officer is entitled to absolute immunity. This approach looks to the nature of the function performed . . . .") (emphasis in original). Ms. Feng's claims that Judge Rosen applied incorrect evidentiary standards and deprived her of due process are claims against Judge Rosen for judicial acts and thus are barred by absolute judicial immunity.

Ms. Feng argues that Judge Rosen "had no jurisdiction at all" and thus judicial immunity does not apply.[47] Not so. Ms. Feng's claim that Judge Rosen purportedly applied the wrong evidentiary standard does not plead that Judge Rosen acted in the clear absence of jurisdiction. *Cf., e.g.*, *Thompson v. Santa Cruz Cty. Human Servs. Dep't*, No. 12-CV-03894-LHK, 2013 WL 1750960, at *2, *10 (N.D. Cal. Apr. 23, 2013) (allegations that state-court judge "committed various errors in the courts of the Juvenile Court proceedings" do not plead that judge acted in the clear absence of jurisdiction). Absolute judicial immunity therefore applies and bars Ms. Feng's claims against Judge Rosen.

\*   \*   \*

---

[47] *Id.* at 10.

ORDER – No. 19-cv-06877-LB          10

The court dismisses Ms. Feng's claims against Judge Rosen as barred by the *Rooker–Feldman* doctrine and judicial immunity. Because these issues cannot be cured through additional pleading, this dismissal is with prejudice. *Cf. Cooper*, 704 F.3d at 785 (affirming dismissal without leave to amend because amendment would have been futile).

**2. Ms. Feng Does Not Plead a Cognizable Claim Under 42 U.S.C. § 1983 or the Fourteenth Amendment Against Dr. Piotrowski, Mr. Tan, Ms. Yim, or San Francisco**

**2.1 Ms. Feng Does Not Plead That Dr. Piotrowski or Mr. Tan Are State Actors**

42 U.S.C. § 1983 allows individuals to sue government officials who violate their civil rights while acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." "The 'under color of state law' requirement is an essential element of a § 1983 case, and it is the plaintiff's burden to establish this element." *Gatpandan v. Wilmington Sav. Fund Soc'y FSB*, No. 17-cv-04001-LB, 2017 WL 5751208, at *2 (N.D. Cal. Nov. 28, 2017) (some internal quotation marks omitted) (quoting *Duenas v. Freitas*, No. C 13-0836 SBA, 2013 WL 3298249, at *5 (N.D. Cal. June 28, 2013)). "'Purely private conduct, no matter how wrongful, is not covered under § 1983.'" *Id.* (quoting *Duenas*, 2013 WL 3298249, at *5). Similarly, a claim under the Fourteenth Amendment requires an allegation of "state action." *Manda v. Albin*, No. 5:19-cv-01947-EJD, 2019 WL 6311380, at *9 (N.D. Cal. Nov. 25, 2019). "Where, as here, deprivations of rights under the Fourteenth Amendment are alleged, these two requirements" — Section 1983's "under color of state law" requirement and the Fourteenth Amendment's "state action" requirement — "converge." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 n.5 (9th Cir. 2011) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 n.8 (1999)).[48]

Ms. Feng does not allege that Dr. Piotrowski or Mr. Tan are state actors or acted under color of state law. *Cf. Mueller v. Auker*, 700 F.3d 1180, 1191–92 (9th Cir. 2012) (private medical provider

---

[48] Ms. Feng purports to bring separate claims under 42 U.S.C. § 1983 and the Fourteenth Amendment. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The court therefore analyzes Ms. Feng's Section 1983 and Fourteenth Amendment claims together.

that reported possible child neglect to Child Protective Services under a state reporting statute did not become a state actor by doing so); *Miranda v. Clark Cty.*, 319 F.3d 465, 468 (9th Cir. 2003) (en banc) (court-appointed attorney that is employed and paid by a public agency is not a state actor when he is appointed by the court to represent a client). Ms. Feng's opposition to Dr. Piotrowski's motion to dismiss does not cognizably respond to Dr. Piotrowski's argument that she is not a state actor,[49] and Ms. Feng failed to file any opposition to Mr. Tan's motion to dismiss.[50] The court dismisses Ms. Feng's claims under 42 U.S.C. § 1983 and the Fourteenth Amendment against Dr. Piotrowski and Mr. Tan for failure to plead that they are state actors or acted under color of state law.

### 2.2 Ms. Feng Does Not Plead That Ms. Yim Violated Her Constitutional Rights

In order for a defendant to be liable for depriving a plaintiff of her constitutional rights, "there must be a showing of personal participation in the alleged rights deprivation[.]" *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing cases). Ms. Feng argues that she was deprived of her procedural and substantive due-process rights with respect to the removal of her children from her custody.[51] Ms. Feng complains about Mr. Hawkinson, Mr. Tan, and Judge Rosen with respect to that removal,[52] but she does not allege that Ms. Yim personally participated in that removal. Ms. Feng alleges as a conclusion that Ms. Yim conspired to cover up witness tampering and obstruction of justice in her trial proceedings,[53] but she does not plead any specific facts with respect to Ms. Yim that support this conclusion. *Cf. Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").[54] The court dismisses Ms. Feng's

---

[49] *See* Pl. Opp'n to Piotrowski Mot. – ECF No. 27.

[50] *See* Docket.

[51] Compl. – ECF No. 1 at 20–22 (¶¶ 73–76).

[52] *Id.*

[53] *Id.* at 30 (¶ 109).

[54] Ms. Feng alleges that Ms. Yim has been telling her children, friends, and lawyer, and teachers and police officers, that she is schizophrenic. *Id.* at 14 (¶ 50). Without more, this does not plead a due-process violation. *Cf. WMX Techs., Inc. v. Miller*, 197 F.3d 367, 373 (9th Cir. 1999) (en banc)

1  claims under 42 U.S.C. § 1983 and the Fourteenth Amendment against Ms. Yim for failure to

2  plead a constitutional violation.

### 2.3 Ms. Feng Does Not Plead That the City and County of San Francisco Violated Her Constitutional Rights

In addition to pleading an underlying violation of a constitutional right, to plead a constitutional claim against a government entity like the City and County of San Francisco, Ms. Feng must plead that it maintained a policy or custom that resulted that violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Liability against a government entity starts from the premise that there is no respondeat superior liability under 42 U.S.C. § 1983, i.e., no entity is liable simply because it employs a person who has violated a plaintiff's rights. *See, e.g.*, *Monell*, 436 U.S. at 691; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). To plead a claim against a government entity, a plaintiff must show that (1) she possessed a constitutional right and was deprived of that right, (2) the government entity had a policy, (3) the policy amounts to deliberate indifference to her constitutional rights, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. #40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).[55] The court dismisses Ms. Feng's claims under 42 U.S.C. § 1983 and the Fourteenth

---

("[T]here is no constitutional protection for the interest in reputation.") (citing *Siegert v. Gilley*, 500 U.S. 226, 233–34 (1991)). Ms. Feng also alleges that Ms. Yim "entrapped" her so that Ms. Yim could file a juvenile-dependency court petition against her. *Id.* at 14–15 (¶¶ 53–54). As a social worker, Ms. Yim "ha[s] absolute immunity when [she] make[s] 'discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents.'" *Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908 (9th Cir. 2008) (en banc) (per curiam) (quoting *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (en banc)). Additionally, Ms. Yim has qualified immunity "insofar as [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017) ("[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[55] The Ninth Circuit has explained, "There are three ways to show a policy or custom of a municipality: (1) by showing 'a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;' (2) 'by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;' or (3) 'by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)).

ORDER – No. 19-cv-06877-LB         13

committed an underlying constitutional violation and for failure to plead that San Francisco had a policy that amounted to deliberate indifference to her constitutional rights and that such policy was the moving force behind any purported constitutional violation.

### 3. Ms. Feng Does Not Plead a Cognizable Claim Under the RICO Act Against Dr. Piotrowski, Mr. Tan, Ms. Yim, or San Francisco

"To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 U.S.C. § 1964(c)). "Civil rights violations and injury to reputation do not fall within the statutory definition of 'racketeering activity'" and thus "fail[] to state a claim under RICO." *Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997). Additionally, "RICO does not provide a cause of action for all types of injury to property interests, but only for injuries resulting in 'concrete financial loss.'" *Diaz v. Gates*, 420 F.3d 897, 898 (9th Cir. 2005) (en banc) (per curiam) (citing *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc)). "Without a harm to a specific business or property interest — a categorical inquiry typically determined by reference to state law — there is no injury to business or property within the meaning of RICO." *Id.* at 900. Ms. Feng has not pleaded injury to her business or property resulting in "concrete financial loss." *Cf. Ybarra-Johnson v. Arizona*, No. CV-14-00171-PHX-GMS, 2014 WL 5843358, at *1, *5 (D. Ariz. Nov. 12, 2014) (dismissing RICO claim by mother and grandmother regarding termination of mother's parental rights to her children because "Plaintiffs have not alleged a crucial element of a RICO claim, that they suffered concrete financial loss to their 'business or property.' Rather, Plaintiffs allege only personal injuries. Any emotional distress or damage to Plaintiffs' family relationships caused by Defendants' actions does not qualify as an injury to business or property under RICO.") (citing *Diaz*, 420 F.3d at 899–900). The court dismisses Ms. Feng's RICO claims against Dr. Piotrowski, Mr. Tan, Ms. Yim, and the City and County of San Francisco for failure to state a claim.

**CONCLUSION**

The court grants the pending motions to dismiss.

The court dismisses Ms. Feng's claims against Judge Rosen with prejudice.

The court dismisses Ms. Feng's claims against Dr. Piotrowski, Mr. Tan, Ms. Yim, and the City and County of San Francisco without prejudice, i.e., the court extends Ms. Feng an opportunity to file an amended complaint. Ms. Feng must file an amended complaint that addresses the deficiencies the court identified in this order within 21 days (i.e., by January 16, 2020). If she does not do so, the court will dismiss her claims against Dr. Piotrowski, Mr. Tan, Ms. Yim, and the City and County with prejudice.

**IT IS SO ORDERED.**

Dated: December 26, 2019

LAUREL BEELER
United States Magistrate Judge