FILED

JAN 06 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Karena A. Feng
1995-34th Avenue
San Francisco, CA 94116
(650) 350-9088
afengre@gmail.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KARENA A. FENG,<br><br>　　Plaintiff,<br><br>vs.<br><br>COUNTY OF SANTA CLARA, COUNTY OF SAN FRANCISCO, ANNA PATROWSKY, PH.D., MAYRA ALVAREZ, ARTHUR GEE-YEH TAN, AMBER ROSEN, BRIAN HAWKINSON, AMY YIM, JOHN DOE, AND JANE DOE,<br><br>　　Defendant | Case No.: CV-19-06877 LB<br><br>First **AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

AMENDED COMPLAINT FOR VIOLATON OF

PENAL CODE § 11172(a), 42 U.S.C. §1983, FOURTEENTH AMENDMENT,

and 18 U.S.C. 1961, et seq.

1

## JURISDICTION

1. This amended complaint is an action for relief, proximately the result of conduct engaged in by the County of Santa Clara, County of San Francisco, Anna Patrowsky, Ph.D., Mayra Alvarez, Amber Rosen, Brian Hawkinson, and Amy Yim, in violation of 42 U.S.C. §1983, Fourteenth Amendment, and 18 U.S.C. 1961, et seq.

2. This Court has personal jurisdiction over the Defendants because all factual allegations derive from violations of 42 U.S.C. §1983, Fourteenth Amendment, 18 U.S.C., 1961 et seq., and for the sake of judicial expediency, this Court has supplemental jurisdiction over all other claims in the actions of the parties within such original jurisdiction that they form part of the same dispute pursuant to 28 U.S.C. §1367.

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§1331 and 1338 (federal question jurisdiction). Jurisdiction is premised upon the Federal defendants' violation of 42 U.S.C. §1983, Fourteenth Amendment, and 18 U.S.C. §1961, et seq.

## VENUE

4. The venue is proper in this district pursuant to 28 U.S.C. §§1391 and 1400 because the bulk of the Plaintiff's business is transacted in the County of San Francisco, and for the Defendants that do not, and for the sake of judicial

expediency, this Court has supplemental jurisdiction over the Defendants that are so related to claims in the actions of the parties within such original jurisdiction that they for the Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

5. Plaintiff, Karena A. Feng (hereinafter "Plaintiff"), is a sui juris resident of San Francisco, CA residing at:

> 1995-34th Avenue
>
> San Francisco, CA 94116
>
> San Francisco County

6. Federal defendant County of Santa Clara (hereinafter "County No.1"), officially the County of Santa Clara, is California's 6th most populous county, with a population of 1,781,642 as of the 2010 census with a principal address of:

> 70 West Hedding Street
>
> San Jose, CA 95110
>
> Santa Clara County

7. Federal defendant County of San Francisco (hereinafter "County No. 2"), officially City and County of San Francisco is the cultural, commercial, and financial center of Northern California. San Francisco is the 13th most

populous city in the United States, and the fourth most populous in California, with 883,305 residents as of 2018 with a principal address of:

> City Hall, Room 168
>
> 1 Dr. Carlton B. Goodlett Place
>
> San Francisco, CA 94102-4678

8. Federal defendant Anna Patrowsky, Ph.D. (hereinafter "Patrowsky"), Kaiser Hospital, Psychiatrist-In-Charge, is a sui juris resident of places unknown with a principal place of business at:

> 200 Hospital Way, 5th Floor
>
> Santa Clara, CA 95051

9. Federal defendant Mayra Alvarez (hereinafter "Alvarez"), Santa Clara, DFCS-CPS Investigator, sued in her individual capacity, is a sui juris resident of places unknown and with a principal place of business at:

> 373 W. Julian Street
>
> Santa Jose, CA 95110
>
> Santa Clara County

10. Federal defendant Brian Hawkinson (hereinafter "Hawkinson"), Santa Clara, DFCS-CPS supervising social worker, sued in his individual capacity, is a sui juris resident of places unknown with a principal place of business at:

> 373 W. Julian Street

San Jose, CA 95110

Santa Clara County

11. Federal defendant Amber Rosen (hereinafter "Rosen"), sued in her individual capacity, is a Superior Court Judge and sui juris resident of places unknown with a principal place of business at:

201 N. First Street, Department 67

San Jose, CA 95113

Santa Clara County

12. Federal defendant Arthur Gee-Yeh Tan (hereinafter "Tan") is a sui juris resident of places unknown and a public attorney in Santa Clara County with a principal place of business at:

31 N 2nd Street Suite 300B

San Jose, CA 95113

Santa Clara County

13. Federal defendant Amy Yim (hereinafter "Yim"), San Francisco DHS, DFCS-CPS supervising social worker; sued in her individual capacity, is a sui juris resident of places unknown with a principal business address of:

170 Otis Street

San Francisco, CA 94103

San Francisco County

STATEMENT OF FACTS

14. On November 26, 2018, Federal defendant Anna Patrowsky entered Plaintiff's maternity recovery ward with a surgical mask over her face and mumbled while talking rapidly, so rapidly that Plaintiff could not comprehend.

15. Patrowsky ripped off one side of her mask to expose her mouth and said that she "just had another patient with postpartum depression or psychosis, right before seeing [you](Plaintiff), and [I](Patrowsky) doesn't want to bump into another one."

16. Plaintiff reminded federal defendant Patrowsky that she had nothing to do with another patient, has been delayed for discharge, and wished to bring my newborn baby home to show the rest of her family.

17. Patrowsky demanded, in a condescending and angry tone, that Plaintiff must take some type of psychedelic drug and stated that "If [you](Plaintiff) do not take it, then [I](Patrowsky) will call CPS to take your children away, throw you into the ward, do not disclose the address so no one can save you and that you cannot see another day's light, and you will lose your children forever. That way, you'll know who's boss!"

18. Shocked at this unethical, unprofessional, and malpractice behavior, Plaintiff kindly asked if she could have a second opinion to which Patrowsky replied, "NO!"

19. Federal defendant Patrowsky said she makes the decisions and Patrowsky yelled, "[I](Patrowsky), am THE LAW!"

20. There were at least 8 (eight) other Kaiser staff members in the room who first-handley witnessed the entire conversation, along with surveillance equipped in the room.

21. Patrowsky ordered Mayra Alvarez to remove Plaintiff's all four children, LF, KF, EF, (and newborn, RF), (*Any person who makes a report of child abuse or neglect known to be false or with reckless disregard of the truth or falsify of the report is liable for any damages caused, <u>without immunity</u>*, Penal Code § 11172(a).)

22. Federal defendant Alvarez lied about LF, KF, & EF being home by themselves when the police, (that Alvarez called), together, the police and Alvarez found the children at Plaintiff's Bella Villagio apartment with Martin Shiang (hereinafter "Martin") and Emily Yang which the police report reflected accordingly (herein as Exhibit "A"). Alvarez deliberately arranged the conditions, so such conditions looked worse than they really were. Federal defendant Alvarez tampered with evidence in flagrant

7

violation (…*predicate act of obstruction of justice,* 18 U.S.C. 1961, et seq.) Federal defendant Alvarez blamed the children for not opening the door and not complying with authorities, when the peephole camera recorder showed Alvarez used her palm to cover the camera, not allowing LF, KF, and EF, to know what was going on or who it was (…*Any person who makes a report of child abuse or neglect known to be false or with reckless disregard of the truth or falsify of the report is liable for any damages caused, <u>without immunity</u>,* Penal Code § 11172(a).).

23. On November 28, 2018, federal defendant Arthur Gee-Yeh Tan told Plaintiff that is is the court-appointed attorney, that he wants Plaintiff to deal with federal defendant Hawkinson herself, and that, "my client, submits to everything in the petition." The plaintiff was coerced.

24. In court, federal defendant Tan told the court that Plaintiff submits to everything that the federal defendant Brian Hawkinson wrote upon the Feng family. Tan said, "do not say a thing" in court, "I will handle this the right way," or "you won't get your kids back." The plaintiff was extorted.

25. When presented to federal defendant Hawkinson, he tossed aside the allegations against Patrowsky stating, "it doesn't matter" and continues to injure the Feng family.

26. Without the Plaintiff's authorization, federal defendant Tan told the court that the plaintiff "submits" repetitively, to the false petition from Brian Hawkinson, Mayra Alvarez, and Anna Patrowsky. Plaintiff had previously described and shown proof to Tan that everything written in the petition is outrageous, unfounded, and not actual. Tan constructively tampered with testimony in flagrant violation of the predicate act of witness tampering under 18 U.S.C. 1961, et seq.

27. Federal defendants Tan and Hawkinson, with the help of the judge, Amber Rosen, continue to disregard anything Plaintiff said and continue to force the separation of vital care to LF, KF, MF and RF; and forced them into inhumane shelters and abusive foster homes.

28. The Santa Clara County Department of Family and Children Services ("DFCS") failed in their duty to investigate the alleged malpractice of a psychiatrist, federal defendant Patrowsky, in which the plaintiff also claims unethical treatment based on NO diagnosis.

29. Without authorization, federal defendant Tan supports any and everything federal defendant Hawkinson, who works together day-in-and out with Juvenile Dependency cases. Hawkinson wants to include fraudulent claims that "the mother was hallucinating and paranoid."

30. When interviewed by Hawkinson, "all of the [Kaiser] staff said the same thing that [plaintiff] had psychosis of unknown or not known kind of psychosis, (not medically known psychosis purportedly is a ripe defense which saves DFCS in lawsuits, while misleading any court).

31. Plaintiff's roommate, Paul Hernandez, who also works at Kaiser, said that all staff must stay consistent with the Psychiatrist-In-Charge; otherwise, they will be thrown into the ward themselves and heavily disciplined or dismissed from their hospital job; however, Hernandez admitted to Plaintiff that no hospital staff needs to follow up on the Psychiatrist-In-Charge's orders if it means that they will perjure themselves under the penalty of felony and face losing their licenses. *(Anyone (not just doctors) who intentionally and or negligently cause injury to someone, then are liable for compensatory damages and ...punitive damages. California Civil Code section 1714.).*

32. Plaintiff received confirmation from another Ph.D. psychologist, Dr. Randolph Badler, that Plaintiff has been ideally equipped to care for LF, KF, MF, and RF after Plaintiff's involuntary placement into a psychiatric ward along with children removed without a warrant or court order, but for underlying "ulterior motives." (Attached herein as Exhibit "B").

33. Federal defendant Tan did not pursue "Emergency Waivers," thereby forfeiting the right to have LF, KF, MF, and RF returned immediately; when

proven that the allegations were fraudulent. Plaintiff was brought into a "six-month-review" process in court proceedings that delays family reunification.

34. On November 28, 2018, federal defendant Hawkinson doctored his First Petition versus his Second Petition in December 2018 in flagrant violation of the predicate acts of obstruction of justice under the Civil RICO statute; for example, the discharge papers from Crestwood Psychiatric facility (the mental ward) in Santa Clara, said that Plaintiff has "blank" for diagnosis, on Plaintiff's original discharge paper. After Hawkinson's arrangement, the diagnosis suddenly said, "unspecified mental disorder," on the First Petition, to a crossed-out, hand-written-in "unspecified psychosis disorder" as a diagnosis on the Second Petition against plaintiff from federal defendant Hawkinson, (attached herein as Exhibit "C"). Federal defendant Hawkinson arranged alteration of the ward papers on his own accord.

35. Federal defendant Tan and Hawkinson continue attacking the Plaintiff with the malicious allegations and demand the plaintiff receive therapy. After the case got transferred to San Francisco, Amy Yim, San Francisco DFCS-CPS supervising social worker, takes up on the malicious allegations disregarding everything the Plaintiff, the children, and the witness (attached as "Exhibit D") proved otherwise; substantiating Tan, Hawkinson, and Yim's fraudulent intentions, in violation of .

11

36. From November 2018 through March 2, 2019, Hawkinson mistreated and tortured LF, KF, EF, and RF. When EF tried to stand up for himself and the sisters, federal defendant Hawkinson locked EF into a room and forced him into treatments saying that EF was rude instead of expressing the truth of how Hawkinson manipulated the situation to have the vulnerable and defenseless LF, KF, EF, and RF forced into mental issues categorization when they do not have any issues, and are fine.

37. From May 2019 to January 2020, Yim continues to torture the plaintiff, her children, and the NRFEM. On August 23, 2019, federal defendant Yim concocted an entrapment scheme where the children have an appointment for immunization shots but were not allowed to go because Yim said so, and then later had to get a night-time appointment, where federal defendant Yim further pretended she had no knowledge about it and then called the police to place Plaintiff under arrest for not having LF, KF, and EF, home earlier.

38. The police report they have on the plaintiff that's supposedly showing as "evidence" against plaintiff, states "prior to arrival" the social worker said... (all hearsay from federal defendant Yim) and the police report stated Yim as "not forthcoming."

39. The police found the children at Plaintiff's apartment and made accusations of kidnap, whereas the first police group, Atzuro Ramirez, told Plaintiff to get the children to a safe place when Plaintiff was out of town.

40. When Plaintiff finally reached the babysitter who told plaintiff that he (the babysitter) took the kids to eat. Plaintiff told the babysitter to go to Martin's (children's home at the NRFEM), but the babysitter got a threat phone text from the police (herein as Exhibit "E") and refused to go to Martin with the children.

41. While the police insisted the Plaintiff to help look for the children. Plaintiff told the babysitter at that time to deliver her children to her apartment, without options, for safety until the police come to get them back to Martin's home (since the babysitter refused to go to Martin's house).

42. When the second group of police found the children, they disregarded Plaintiff's following first group of police's (Atzuro Ramirez, person-in-charge) instructions, and accused Plaintiff of kidnapping and threw the plaintiff and the babysitter into jail.

43. Although the case got entirely dismissed in criminal justice court, Yim continues to use portions of the police report to make it look devastating; like there's Police Evidence on Plaintiff suddenly.