44. Yim based this entrapment scheme to further remove all four children from NRFEM (Martin's house) and forced the four children, LF, KF, EF, & RF, out of reunification with plaintiff, and into seclusion at a Tracy, California foster home over 65 miles away from Martin's house.

45. The reunification process has been excellent, until two weeks prior to the reunification hearing; where Yim suddenly arranged the entrapment scheme.

46. Yim continues her torturing the children by ongoingly disturbing LF, KF, & EF's school; by randomly visit and surprise appearing during school time to do psychiatric evaluations on the children.

47. Yim said that the school staff said Plaintiff's children have "mental issues;" however, when Plaintiff called and Emailed the school to ask and verify, the school was shocked and apologetic to what is happening and had no idea why the social worker, Yim would make such claims. The school further said, they did NOT say that.

48. Yim directs clinicians to perform psychiatric evaluations on all four children, including the baby RF; whereas the older children answer "NO" to something, the evaluator writes "YES" instead as answers. Whatever the children say are not acknowledged, rather twisted into answers that are entirely tainted by the evaluator himself, which is false and fraudulent. The mishandling and manipulation by these conspirators violate privilege and

protected information, *(California Civil Code §1714; and to base on insufficient evidence to remove children, Evidence §388.)*

49. Yim further directed Plaintiff to take a 730 Evaluation done by Dr. Amy Watt (hereinafter as "Watt") who is a psychologist that asks leading questions to taint the entire test, thus producing an inaccurate report that was intentionally meant to support the manipulations of the federal defendant, Yim.

50. Watt reported that Plaintiff "didn't know [her](Plaintiff's) name or who [she](Plaintiff) was or where she worked." If that's the case, how did Watt, the CPS Networked 730 Evaluator, knew who Plaintiff was, or was able to verify if Plaintiff was indeed Karena Feng to make such a severe diagnosis on someone without verification of identity? The maliciousness here is outrageous.

51. For example, when asked, are you depressed? The Plaintiff said, "no," then the next question is, "When you are depressed, do you eat more or less?" The Plaintiff answered, "I'm not depressed, and I'm not eating more or less." Then Watt said, "if you don't choose yes or no, [I'll](Watt) call CPS and say that [you're](Plaintiff) is not cooperative and you'll lose parental rights." The test is fraudulent, biased, an entrapment, non-objective, and downright malicious.

52. Plaintiff insists on her answers, but Watt disregards Plaintiff's responses and writes up whatever Watt wants in support of Yim's directions.

53. Plaintiff voluntarily went through an equal leveled psychologist who's a neutral third party that spent over twenty-four hours of investigation to verify Plaintiff was an ideal mother (herein Second-Opinion as, Exhibit "A"), while the CPS network psychologist Watt, spent two hours to come up with meaningless, fraudulent and malicious remarks of malpractice.

54. Yim continues to demand the Plaintiff to seek therapy. Plaintiff insists that Yim does not speak with the therapist beforehand to prevent fraud.

55. Yim demanded Plaintiff to seek therapy at San Francisco Mental Health Services, and Plaintiff visited San Francisco Sunset Mental Health and went through an over four-hours-long evaluation with Tammy Yu (hereinafter as "Yu").

56. Yu determined in a professional manner that Plaintiff had no issues requiring any therapy and case is closed (herein as Exhibit "F"). Yim ongoingly demands Yu to re-open the case and insists Plaintiff get therapy that is not within the scope of the therapy profession.

57. Yu advised the Plaintiff to seek a different supervising social worker instead. However, Plaintiff's requests for a different social worker had been ignored.

58. Yim tells Plaintiff's children tall tales about Plaintiff to brainwash the children – if mom's alive, she's a substance abuser. If mom's not a substance abuser, then she's judged as "insane."

59. Yim further CPS malicious allegations by insisting on allegations to be true by Plaintiff's "admittance to CPS allegations" back in March 2019; however, Plaintiff has NEVER admitted to any of the wrongful CPS allegations. Vincent Davis (Plaintiff's attorney at the time) told plaintiff to **ACKNOWLEDGE** in court as part of cooperating with court procedures as an awareness of those CPS allegations. Acknowledging is different from the definition of ADMITTING. Vincent Davis explicitly explained that those were two different conditions, but expressed in a similar fashion. And, that acknowledging is NOT admitting.

60. The Court ordered 9(nine) hours daily visitation with the children, but Yim destructively changed it to 3 hours or less per week and refused reunification based on Yim's creations of fraud entrapment declared in paragraphs #23-30, against Plaintiff's defenseless family.

61. Vincent Davis appealed the court's order and to dismiss the case. However, the court delayed the process due to the case gotten turned over to a CPS networked public counsel, Alexa Collentine, who waited over half-year to intentionally delay court processes, and then said it was too late for appeal.

62. The plaintiff trusts America's justice and successfully turned-in an appeal in Pro Per, which gotten accepted in the Sixth District Court.

63. FOURTEENTH AMENDMENT – LEGAL STANDARD

64. **Due Process Clause**

65. Section One of the Fourteenth Amendment to the United States Constitution provides:

66. [N]or shall any State deprive any person of life, liberty, or property, without due process of law.

67. In the past thirty-five years, the case law reads and is the authority that:

    a.  It is well settled that parents have a substantive due process right to the custody of their children and, except in emergency circumstances, a procedural due process right to a pre-deprivation child custody hearing.

    b.  The Fourteenth Amendment imposes a requirement that except in emergency circumstances, the judicial process must be accorded to both parent and child before removal of the child from his or her parent's custody may be effected.

    c.  "[A] parent may . . . bring suit under a theory of violation of his or her right to substantive due process.. Parents have a 'substantive right under the Due Process Clause to remain together [with their children]

without the coercive interference of the awesome power of the state.'"

… *Tenenbaum  v. Williams*, 193 F.3d 581, 600 2d Cir. 1999) (second

alteration in original); *Cox v. Warwick Valley Cent. Sch. Dist*., 654

F.3d 267, 275 (2d Cir. 2011); and

d.  "The interest of natural parents 'in the care, custody, and management

of their child' is a 'fundamental liberty interest protected by the

Fourteenth Amendment'" (quoting Santosky v. Kramer, 455 U.S. 745,

483 753 (1982)).

68. In stating a claim of violation of procedural due process, Plaintiff asserts:

a.  The existence of a property or liberty interest that was deprived (the

liberty and property that was lost by a warrantless, unlawful seizure

without a court order).

b.  Deprivation of that interest without due process as a result of witness

tampering, obstruction of justice, extortion, and a civil conspiracy to

cover it up (the lack of any non-tarnished fat finding hearing since the

inception of this matter.)

69. In stating a claim of violation of substantive due process, Plaintiff asserts

that:

a.  She had a valid interest (the biological mother of unlawfully seized

LF, KF, EF, and RF.)

b. That interest was infringed upon in an arbitrary or irrational manner (the arbitrary allegation of "neglect") contrary to the legal standard of neglect defined as:

    i. Any recent act or failure to act on the part of a parent or caretaker which results in death, serious physical or emotional harm, sexual abuse or exploitation"; or

    ii. An act or failure to act which presents an imminent risk of serious harm," (42 U.S.C.A. § 5106g).

70. Further, Plaintiff maintains that quoting Tenenbaum, that the seizure, under unlawful circumstances (no warrant and no Court order), of LF, KF, EF, and RF "was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even where it accompanied by full procedural protection." *Cox v. Warwick Valley Cent. Sch. Distr., 654 F.3d 267, 275 (2d Cir. 2011) (...Tenenbaum, 193 F.3d at 600):*

a. So shocking in that the Hawkinson's Petitions were revised 5 times with the final one amounting to 126 pages report; and included someone other than the Plaintiff's name, clearly committing fraud by taking someone else's story as Plaintiff's and proceeded under an unconstitutional standard (*Santorsky v. Kramer 455 (1982)*) that

requires the clear and convincing standard as opposed to the preponderance of evidence standard);

b. So arbitrary and without Plaintiff's authorization, federal defendant Tan told the court that Plaintiff "submits" repetitively, to the false petition from DFCS; plaintiff had previously told Tan that everything written in the petition is outrageous, unfounded, and not accurate; Tan constructively tampered with testimony in flagrant violation of the predicate act of witness tampering under 18 U.S.C. 1961, et seq.

c. So egregious in the glaring, flagrant actions of federal defendants, where proceeding under the preponderance of evidence standard, federal defendant Rosen had no subject matter jurisdiction.

71. As a result, by a. to c. above, Plaintiff has suffered the shock of conscience and the loss of her children to this day.

72. Plaintiff was singled out and discriminated against for reasons that an Asian American woman, with a considerable commercial real estate portfolio, looked upon with resentment by her adversaries, and the federal defendants treated Plaintiff differently than others who were similarly situated (*City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985); *Hart v. Westchester Cnty. Dep't of Soc. Servs.,* 160 F. Supp. 2d 570, 578 (S.D.N.Y. 2001), and Giano v. Senkowski,* 54 F.3d 1050 (2d Cir. 1995).

21

73.**18 U.S.C. 1961, et seq. – LEGAL STANDARD**

74. Plaintiff asserts that according to 18 U.S.C. 1961, et seq. (the "RICO Statute"), and shows by a preponderance of the evidence, that there exists a racketeering Enterprise in California that consists of: County of Santa Clara, County of San Francisco, DFCS, Superior Court of California County of Santa Clara and San Francisco, a Family Court Judge, DFCS social workers, and a Ph.D. leveled psychiatrist. Plaintiff asserts and shows with evidence that social workers, a judge, and a psychiatrist conspire and collaborate to concoct fictitious instances of child neglect contrary to the legal standard.

75. Traditional RICO Statute predicate acts are contained herein and include:

    i.  Witness tampering;

    ii.  Obstruction of justice;

    iii.  Extortion; and

    iv.  Civil conspiracy to cover up witness tampering and obstruction of justice.

76. These predicate acts pled with specificity in the instant action.

77. The RICO Statute contains a provision that allows for the commencement of a civil action by a private party to recover damages sustained as a result of the commission of a RICO predicate offense(s). The RICO Statute also permits a private individual "damaged in his/her business or property" by a

"racketeer" to file a civil suit where the term "property" is construed to mean

tangible property. The plaintiff must prove the existence of an "enterprise",

and plaintiff proves with evidence of the existence of such an enterprise

among California's County of Santa Clara, County of San Francisco, a

Family Court Judge, DFCS social workers, and a Ph.D. leveled psychiatrist.

As pled elsewhere in the instant action, the connections among these parties

prove the existence of an "enterprise."

78. Plaintiff shows with specificity at least one of four specified relationships

between the defendant(s) and the Enterprise: either the defendant(s) invested

the proceeds of the pattern of racketeering activity into the Enterprise (18

U.S.C. §1962(a)); or the defendant(s) acquired or maintained an interest in,

or control of, the Enterprise through the pattern of racketeering activity

(subsection (b)); or the defendant(s) conducted or participated in the affairs

of the Enterprise "through" the pattern of racketeering activity (subsection

(c)), or the defendant(s) conspired to do one of the above (subsection (d)).

The Enterprise is either the 'prize,' 'instrument,' 'victim,' or 'perpetrator' of

the racketeers. A Civil RICO action can be filed in Federal Court.

79. The civil component allows the recovery of treble damages (damages in

triple the amount of the actual/compensatory damages) and by Count Three

and Judgment Requested, Plaintiff demands treble damages in the amount of

$750,000,000 (seven hundred and fifty million dollars.

**80.Predicate Act: Witness Tampering**

**81.**18 U.S.C. §1512(b) provides:

Witness tampering is the act of attempting to alter or prevent the testimony of

witnesses within criminal or civil proceedings. Laws regarding witness

tampering also apply to proceedings before Congress, executive departments,

and administrative agencies. To be changed with witness tampering in the

United States, the attempt to alter or prevent testimony is sufficient. There is

no requirement that the intended obstruction of justice be completed.

82.Hawkinson and Yim tampered with witnesses and obstructed justice when

he called all of [my](Plaintiff's) witnesses and family supporters to tell them

that [our](Plaintiff's family) are all mental and that if they took

[us](plaintiff's family) in or help plaintiff, that it will be 18 long years and

that if anyone wants to be our supporters, would be exposed to the tax

authorities, medical authorities, and any other departments, anytime, for the

entire duration of 18 years, Hawkinson and Yim tampers with witnesses.

83.Without Plaintiff's authorization, federal defendant Tan told the court that

Plaintiff "submits" repetitively, to the false petition from social service;

Plaintiff had previously told Tan that everything written in the petition is

outrageous, unfounded, and not accurate; Tan constructively tampered with

testimony.

84. Whoever knowingly uses intimidation, threatens, or corruptly persuades

another person or attempts to do so, or engages in misleading conduct

toward another person in an official proceeding…:

85. 18 U.S.C. §1512 (c) (2) provides:

Whoever corruptly-otherwise obstructs, influences, or impedes any official

proceedings or attempts to do so…

86. 18 U.S.C. §1512 (e) provides:

In a prosecution for an offense under this section, it is an affirmative defense,

as to which the defendant has the burden of proof by basic evidence, that the

conduct consisted solely of lawful conduct and that the defendant's sole

intention was to encourage, induce, or cause the other person to testify

truthfully.

87. 18 U.S.C. §1515 (3) provides:

The term "misleading conduct" means-knowingly making a false statement;

(A) knowingly making a false statement (B) intentionally omitting

information from a statement and thereby causing a portion of such statement

to be misleading, or intentionally concealing a material fact, and thereby

creating a false impression by such statement…€ knowingly using a trick, scheme, or device with intent to mislead;

88. 18 U.S.C. §1515 (b) provides:

As used in §1505, the term "corruptly" means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

89. DISCUSSION

90.   The facts of the instant action make it abundantly clear that Federal defendant Hawkinson and Yim knowingly, corruptly persuaded Plaintiff's witnesses and family supporters to tell them [we](plaintiff) are all mental and that if they took [us](plaintiff's family) in or help us, that it will be 18 long years and that if anyone wants to be [our](plaintiff) supporters, would be exposed to the tax authorities, medical authorities, and any other departments, anytime with the intent to (1) influence, delay, or prevent the testimony of witnesses to aid in the defense of Plaintiff in an official proceeding. Federal defendant Hawkinson committed witness tampering under 18 U.S.C. §1512.

91.   Federal defendant Hawkinson simply asked Plaintiff's witnesses and family members to tell less than the whole truth and Plaintiff's witnesses and

family members knew that they were being asked to tell less than the whole truth, therefore Hawkinson corruptly persuaded the witnesses and is a violation of the laws, *res ipsa loquitur*, and has harmed Plaintiff and the injury was caused by the violation of 18 U.S.C. §§1961, et seq.

**92. Predicate Act: Obstruction of Justice**

93. Federal defendant Alvarez deliberately arranged the conditions, so when such conditions looked worse than they really were; Alvarez tampered with evidence in flagrant violation of the predicate act of obstruction of justice that allowed the Federal defendant(s) to the invested proceeds of the pattern of racketeering activity into and fund the Enterprise, (18 U.S.C. §1962(a)).

94. By implication in the instant action, the Federal defendants meet all four of the specified relationships of par. 61: they funded the Enterprise; the Federal defendants acquired and maintained an interest in the Enterprise through the pattern of racketeering activity; the Federal defendants conducted or participated in the affairs of the Enterprise through the pattern of racketeering activity; and conspired to do one of the aforementioned, *res ipsa loquitur*.

95. 18 U.S.C. §1503 provides:

Whoever corruptly…endeavors to influence, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice.

96. Federal defendant Alvarez tampered with evidence that cast an unwarranted negative light upon Plaintiff, thereby usurping the power of the courts, and resulted in obstruction of justice.

97. DISCUSSION

98. 18 U.S.C. §1515 states:

…the term "corruptly" means acting with an improper purpose personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.

99. Plaintiff states, by the facts of the instant action make it abundantly clear that Federal defendant Alvarez deliberately arranged the conditions, so when such conditions looked worse than they really were; Alvarez tampered with evidence and in doing so, Federal defendant Alvarez committed obstruction of justice under Section 1503.

100.   **Predicate Act: Extortion**

101.   Federal defendant Hawkinson and Yim, extorted when he called all of Plaintiff's many witnesses and family supporters to them [we](plaintiff's family) are all mental that if they took [us](plaintiff's family) in or help us, that it will be 18 long years and that if anyone wants to be [our](plaintiff's family), and threatened them with exposure to the tax authorities, medical

authorities, and any other departments, anytime, for the entire duration of 18 years and allowed the Enterprise to invest such sums in the proceeds of the pattern of racketeering activity into and fund the Enterprise, (18 U.S.C. §1962(a)).

102.    Extortion is defined as the obtaining of property from another with his or her consent by the wrongful use of either force or fear, or under color of official right. The property or right to property must be obtained. This can be either the property itself or the right to it.

103.    Property rights that can be transferred to constitute extortion.

    a.  The right to prosecute a lawsuit or an appeal;

    b.  Obtaining an official act of a public officer can be the basis for extortion.

104.    If a person makes an extortionate demand in writing, he/she may be guilty even if the victim parts with no property

105.    Any person who, by use of improper threat, to another person's signature on any document gets giving a property right may be charged with extortion even if the property right is never actually obtained.

106.    DISCUSSION

107.    Plaintiff asserts Federal defendant Hawkinson and Yim extorted plaintiff when Hawkinson called all of plaintiff's witness's and family

supporters to tell them [we](plaintiff's family) are all mental and that if they

took [us](plaintiff's family) in or help us, that will be 18 long years and that

if anyone wants to be [our](plaintiff's family), would be exposed to the tax

authorities, medical authorities, and any other departments, anytime, for the

entire duration of 18 years.

108.    Federal defendant Hawkinson and Yim induced Plaintiff's witnesses

to provide that property under the color of official right.

109.    Where Plaintiff sees that there has been no progress toward

reunification, the implication is that Federal defendants will seek further

legal intervention against Plaintiff (termination of parental rights) and

directing LF, KF, EF, & RF to out of state adoption should Plaintiff not

acceded to the Federal defendants' demands.

**110.    Predicate Act: Conspiracy to Cover-up Witness Tampering and**

**Obstruction of Justice**

111.    42 U.S.C. §1985 provides:

If two or more persons in any State or Territory conspire to deter, by force,

intimidation, or threat, any party or witness…from attending such court, or

from testifying to any matter pending therein, freely, fully, and truthfully, or

to…influence the verdict, presentment, or indictment of any grand or petit

juror in any such court, or to injure such juror in his/her person or property

30

on account of any verdict, presentment, or indictment lawfully assented to by

him/her, or for his/her being or having been such juror; or if two or more

persons conspire for the purpose of impeding, hindering, obstructing, or

defeating, in any manner, the due course of justice in any State or Territory,

with intent to deny to any citizen the equal protection of the laws, or to injure

him or his property for lawfully enforcing, or attempting to enforce, the right

of any person, or class of persons, to the equal protection of the laws.

112.    DISCUSSION

113.        It will be established during Discovery that the Federal defendants,

*inter alia*, Hawkinson, Yim, and Alvarez persuaded Plaintiff's witnesses to

make false statements of fact.

114.        In doing so, Hawkinson, Yim, and Alvarez inspired and provided a

mechanism to the Federal defendants to create a conspiracy to cover up

witness tampering and obstruction of justice in Plaintiff's trial proceedings.

115.        FEDERAL DEFENDANTS ARTHUR GEE-YEH TAN, BRIAN

HAWKINSON, AMY YIM, MAYRA ALVAREZ, & ANNA

PATROWSKY, ARE NOT IMMUNE.

116.        The United States Supreme Court has stated that qualified immunity

is the norm, absolute immunity is the exception (Harlow v. Firzgerald, 457

U.S. 750, 800, 807, 810-11 (1982).

117.     In Balcerzak, Stephanie E. "Qualified Immunity for Government

Officials: The Problem of Constitutional Purpose in Civil Rights Litigation

95, No. 1 (Nov. 1985) pp. 126-147. The Yale Law Journal, the author stated:

   In Harlow, the Supreme Court fundamentally altered the qualified

immunity defense available to an official charged with a constitutional

violation in a civil rights action for damages. Under Harlow, an official is

entitled to immunity unless his conduct violates a "clearly established"

constitutional right.

118.     All constitutional rights are expressly stipulated and written in the

U.S. Constitution, which is the supreme law of the land, meaning that any

other laws which are in contradiction with it are considered unconstitutional

and thus regarded as invalid.

119.     The Fourteenth Amendment to the U.S. Constitution provides:

   [N]or shall any State deprive any person of life, liberty, or property,

without due process of law.

120.     U.S.C. §1983 which provides in pertinent part:

   Every person who, under color of any statute, ordinance, regulation,

custom or usage, of any State or Territory or the District of Columbia,

subjects, or causes to be subjected, any citizen of the United States or

other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action in at law, suit in equity,

or other proper proceeding for redress.

121.     Respectfully, Federal defendants Hawkinson, Alvarez, and Yim has

no defense in their noncompliance to State and Federal laws, therefore has

disqualified any immunity defense that protect social workers, therefore

making immunity inapplicable based on Federal defendants' reckless,

malicious, above-the-law, and irreversible damages of causing severe harm

to Plaintiff's family autonomy, and friends. (…*remains to subject every*

*person to its provisions,* Supremacy Clause, Article Six, Clause 2 of the U.S.

Constitution that establishes the U.S. Constitution, trumps State laws. The

Fourteenth Amendment, Harlow and §1983).

122.     Anna Patrowsky demanded that Plaintiff must take some type of

psychedelic drug and stated that "If [you](Plaintiff) do not take it, then

[I](Patrowsky) will call CPS to take your children away, throw you into the

ward, do not disclose the address so no one can save you and that you cannot

see another day's light, and you will lose your children forever. That way,

you'll know who's boss!" and Patrowsky yelled, "[I](Patrowsky), am THE

LAW!" (…*Anyone (doctors, and all) who intentionally and or negligently*

*cause injury to someone, then they are liable for compensatory damages*

*and…punitive damages,* California Civil Code §1714, & *Any person who*

*makes a report of child abuse or neglect known to be false or with reckless*

*disregard of the truth or falsify of the report is liable for any damages*

*caused, <u>without immunity</u>,* Penal Code § 11172(a).)

123.     Alvarez lied about LF, KF, & EF being home by themselves when

the police, (that Alvarez called), together, the police and Alvarez found the

children at Plaintiff's Bella Villagio apartment with Martin Shiang and

Emily Yang which the police report reflected accordingly (herein as Exhibit

"A"). *(Any person who makes a report of child abuse or neglect known to be*

*false or with reckless disregard of the truth or falsify of the report is liable*

*for any damages caused, <u>without immunity</u>,* Penal Code §

11172(a);…*Anyone (doctors, and all) who intentionally and or negligently*

*cause injury to someone, then they are liable for compensatory damages*

*and…punitive damages,* California Civil Code §1714; *and to base on*

*insufficient evidence to remove children,* Evidence §388*).*

124.     On August 23, 2019, Yim suddenly concocted an entrapment

scheme where the children have an appointment for immunization shots but

were not allowed to go because Yim said so, and then later had to get a

night-time appointment, where federal defendant Yim further pretended she

had no knowledge about the immune appointment and intentionally removed