UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| KARENA APPLE FENG,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>        Defendants. | Case No. 19-cv-06877-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 82 |

## INTRODUCTION

This is one of five separate lawsuits that pro se plaintiff Karena Feng has brought — based on the same underlying facts — challenging the removal of her children from her custody.[1] She sued the County of Santa Clara (the "County"), the City and County of San Francisco (the "CCSF"),

---

[1] *See e.g.,* FAC – ECF No. 44; *Feng v. Yim*, No. 3:19-cv-07227-LB (N.D. Cal. Filed Oct. 31, 2019; dismissed with prejudice on April 21, 2020) (*Feng II*); *Feng v. County of San Francisco*, No. 4:19-cv-07228-YGR (N.D. Cal. Filed Nov. 1, 2019) (*Feng III*); *Feng v. Department of Human Services, Family & Children's Services*, 3:20-cv-00648-EMC (N.D. Cal. Filed Jan. 28, 2020) (*Feng IV*); *Feng v. California Department of Social Services Children and Family Services Division*, 3:20-cv-00692-EMC (N.D. Cal. Filed Jan. 30, 2020) (*Feng V*). Judge Gonzalez-Rogers previously adopted this court's report and recommendation, and dismissed *Feng III* for lack of subject-matter jurisdiction. *See* Order, No. 19-cv-07228-YRG – ECF No. 15. Judge Chen also adopted this court's report and recommendation and dismissed *Feng VI* and *Feng V* for lack of subject-matter jurisdiction. *See* Order, 3:20-cv-00648-EMC – ECF No. 20; Order, 3:20-cv-00692-EMC – EMC No. 12. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 19-cv-06877-LB

psychiatrist Anna Piotrowski, M.D., Santa Clara social workers Mayra Alvarez and Brian Hawkinson, San Francisco social worker Amy Yim, California Superior Court Judge Amber Rosen, and Ms. Feng's court-appointed attorney Arthur Gee-Yeh Tan. All parties have consented to magistrate jurisdiction.[2]

The court dismissed with prejudice Ms. Feng's amended complaint against Judge Rosen, Dr. Piotrowski, Mr. Tan, the CCSF and Ms. Yim.[3] The remaining defendants, County of Santa Clara and Santa Clara social workers Mayra Alvarez and Brian Hawkinson (collectively, the "Santa Clara defendants"), moved to dismiss the amended complaint.[4] Ms. Feng did not file an opposition.[5] The court can decide the motion without oral argument under Civil Local Rule 7-1(b). The court grants the motion to dismiss with prejudice: (1) Ms. Feng's claims are barred by the *Rooker–Feldman* doctrine; (2) she does not state a valid claim for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); and (3) she does not state a valid RICO claim.

**STATEMENT**

Construing her amended complaint liberally, Ms. Feng alleges the following.

Ms. Feng gave birth to a baby (her fourth) in November 2018. On November 26, 2018, Dr. Piotrowski entered Ms. Feng's maternity ward and said that "she just had another patient with postpartum depression or psychosis," and she "doesn't want to bump into another one."[6] Ms. Feng responded that she had nothing to do with another patient, that she had been delayed for discharge, and that she wanted to bring her newborn baby home to show the rest of her family.[7] Dr.

---

[2] Consents – ECF Nos. 4, 15, 17, 19, 20, 28.

[3] Order – ECF No. 80.

[4] The Santa Clara defendants were not served properly. Opp'n to Default – ECF No. 58; Consent – ECF No. 28; Order – ECF No. 73. They waived service and timely filed their motion to dismiss. Order – ECF No. 73 at 2; Mot. – ECF No. 82.

[5] The court twice extended Ms. Feng's deadline to file an opposition or statement of non-opposition to the Santa Clara defendants' motion. Orders – ECF No. 86, 89.

[6] FAC – ECF No. 44 at 6 (¶¶ 14–15).

[7] *Id.* (¶ 16).

Piotrowski demanded that she take some type of psychedelic drug and said, "If []Plaintiff does not take it, then I Dr. Piotrowski would call CPS [Child Protective Services] to take the children away, throw you [plaintiff] into the ward, do not disclose the address so no one can save you and that you cannot see another day's light, and you will lose your children forever. That way you'll know who's boss!"[8] Ms. Feng asked for a second opinion, to which Dr. Piotrowski replied, "NO!"[9] Ms. Feng alleges that Dr. Piotrowski yelled that she is "THE LAW."[10] During this incident, "[t]here were at least 8 (eight) other Kaiser staff members in the room . . . along with surveillance equipped in the room."[11]

Between November 26 and November 28, 2018, a medical provider placed Ms. Feng involuntarily in a psychiatric ward at the Crestview Psychiatric Facility in Santa Clara.[12] The facility discharged her on November 28, 2018.[13]

Dr. Piotrowski "ordered Mayra Alvarez to remove Plaintiff's all four children, LF, KF, EF, (and newborn, RF)."[14] The police arrived at Ms. Feng's home and found Ms. Feng's children there with another couple, the Shiangs.[15] Ms. Alvarez lied and reported that the children were at Ms. Feng's home by themselves (instead of with the Shiangs) and "deliberately arranged the conditions, so such conditions looked worse than they really were."[16]

On November 28, 2018, Santa Clara social worker Brian Hawkinson filed an unspecified petition naming Ms. Feng.[17] In December 2018, Mr. Hawkinson filed a second petition.[18]

---

[8] *Id.* (¶ 17).

[9] *Id.* at 7 (¶ 18).

[10] *Id.* (¶ 19).

[11] *Id.* (¶ 20).

[12] FAC Ex. C (psychiatrist discharge summary) – ECF No. 44-2 at 11–14.

[13] *Id.*

[14] FAC – ECF No. 44 at 7 (¶ 21).

[15] *Id.* at 7 (¶ 22).

[16] *Id.*

[17] *Id.* at 11 (¶ 34).

[18] *Id.*

United States District Court
Northern District of California

Mr. Hawkinson said, among other things, that "the mother [Ms. Feng] was hallucinating and paranoid."[19] Mr. Hawkinson "doctored" his petitions and crossed out "mental disorder" and wrote "psychosis disorder" on her discharge papers.[20] "[A]ll of the Kaiser staff said the same thing[,] that plaintiff had psychosis of unknown or not known kind of psychosis."[21]

On the same day, defendant Arthur Gee-Yeh Tan, Ms. Feng's court-appointed attorney, told her to "not say a thing" in court and that he "'[he] will handle this the right way,' or 'you [plaintiff] won't get your kids back.'"[22] Mr. Tan, "[w]ithout the plaintiff's authorization . . . told the court that the plaintiff 'submits' repetitively, to the false petition from Brian Hawkinson, Mayra Alvarez, and Anna Patrowsky [*sic*]."[23] Mr. Hawkinson apparently filed the petition before California Superior Court Judge Amber Rosen. "Tan and Hawkinson, with the help of the judge, Amber Rosen, continue to disregard anything Plaintiff said and continue to force the separation of vital care to LF, KF, MF and RF."[24]

The petition and court proceeding apparently resulted in Santa Clara County's placing Ms. Feng's children LF, KF, MF, and RF initially in foster homes.[25] The foster homes were "inhumane" and "abusive."[26] "From November 2018 through March 2, 2019, Hawkinson mistreated and tortured LF, KF, EF, and RF."[27] Mr. Hawkinson "manipulated the situation to have the vulnerable and defenseless LF, KF, EF, and RF forced into mental issues categorization when they do not have any issues, and are fine."[28] After Ms. Feng was released on November 2018 from the involuntary psychiatric hold, she "received confirmation from another Ph.D. psychologist, Dr.

---

[19] *Id.* at 9 (¶ 29).

[20] *Id.* at 11 (¶ 34); *see* FAC Ex. C (psychiatrist discharge summary) – ECF No. 44-2 at 11–14.

[21] FAC – ECF No. 44 at 10 (¶ 30).

[22] *Id*. at 8 (¶ 24).

[23] *Id*. at 9 (¶ 26)

[24] *Id*. (¶ 27).

[25] *Id.*

[26] *Id.*

[27] *Id*. at 12 (¶ 36).

[28] *Id.*

Randolph Badler, that Plaintiff has been ideally equipped to care for LF, KF, MF, and RF."[29] Defendants Tan and Hawkinson continued to "attack[] the Plaintiff with the malicious allegations and demand the plaintiff receive therapy."[30]

Ms. Feng's case was transferred to San Francisco to social worker Amy Yim.[31] Ms. Yim "takes up on the malicious allegations disregarding everything the Plaintiff, the children, and the witness . . . proved otherwise; substantiating Tan, Hawkinson, and Yim's fraudulent intentions, in violation of."[32] Ms. Yim "continue[d] to torture the plaintiff, her children, and the NRFEM."[33]

Ms. Yim concocted an "entrapment scheme" against her.[34] On August 23, 2019, Ms. Feng's children had an appointment for immunization shots.[35] Ms. Feng alleges that her children were not allowed to go to their appointment because Ms. Yim said that they could not.[36] Her children therefore had to schedule a nighttime appointment, and Ms. Yim called the police to place her under arrest for not having her children home earlier.[37] In addition, apparently at some point, possibly related to the immunization-shots incident, the police arrested Ms. Feng for kidnapping her children (when the police found the children at Ms. Feng's apartment instead of the Shiangs' home).[38] The charge was dismissed, but Ms. Yim "continues to use portions of the police report to make it look devastating."[39] Ms. Yim "based this entrapment scheme to further remove all four

---

[29] *Id.* at 10 (¶ 32); FAC Ex. B (Badler letter saying that there was no evidence of a psychiatric disorder that would interfere with Ms. Feng's ability to care for her children) – ECF No. 44-2 at 10.

[30] FAC – ECF No. 44 at 11 (¶ 35).

[31] *See id.*

[32] *Id.*

[33] *Id.* at 12 (¶ 37). "NRFEM" stands for "non-relative extended-family member," and Ms. Feng alleges at points that NRFEM refers to Martin Shiang's house. *See* FAC – ECF No. 44-1 at 1 (¶ 44). Ms. Feng alleged in her original complaint that Mr. Hawkinson had approved, at some point, the children to stay with Martin and Emily Shiang. *See* Compl. – ECF No. 1 at 12 (¶ 42).

[34] FAC – ECF No. 44 at 12 (¶ 37)

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *See id.* at 13 (¶¶ 39–42).

[39] *Id.* at 13 (¶ 43)

ORDER – No. 19-cv-06877-LB           5

children from NRFEM (Martin's house) and forced the four children, LF, KF, EF, & RF, out of reunification with plaintiff, and into seclusion."[40]

Ms. Yim "continues her torturing the children" by performing random school visits and conducting psychiatric evaluations on them.[41] Ms. Yim "directed Plaintiff to take a 730 Evaluation done by Dr. Amy Watt . . . who is a psychologist that asks leading questions to taint the entire test, thus producing an inaccurate report that was intentionally meant to support the manipulations of" Ms. Yim.[42] Dr. Watt's evaluation was "fraudulent, biased, an entrapment, non-objective, and downright malicious."[43] Ms. Yim "demanded Plaintiff to seek therapy at San Francisco Mental Health Services," where Ms. Feng met with an individual named Tammy Yu.[44] Ms. Yu found that Ms. Feng did not require therapy and closed the case.[45] Ms. Yim continued to insist on therapy for Ms. Feng.[46] Ms. Feng asked for a different social worker but her requests were ignored.[47] Ms. Yim "brainwash[es] the children" by telling them that "if mom's alive, she's a substance abuser. If mom's not a substance abuser, then she's judged as 'insane.'"[48] "The court ordered 9 (nine) hours daily visitation with the children, but Yim destructively changed it to 3 hours or less per week and refused reunification based on Yim's creations of fraud entrapment."[49]

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon

---

[40] FAC – ECF No. 44-1 at 1 (¶ 44).
[41] *Id.* at 1–2 (¶¶ 46–48).
[42] *Id.* (¶ 49).
[43] *Id.* (¶ 51).
[44] *Id.* at 3 (¶ 55).
[45] *Id.* (¶ 56). Ms. Feng attaches only page one out of the seven pages of Ms. Yu's assessment report. Ex. F to FAC – ECF No. 44-2 at 21.
[46] FAC – ECF No. 44-1 at 3 (¶ 56).
[47] *Id.* (¶ 57).
[48] *Id.* at 4 (¶ 58).
[49] *Id.* (¶ 60).

which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (citations and internal quotation marks omitted). But "leave to amend may be denied when a plaintiff has demonstrated a 'repeated failure to cure deficiencies by amendments previously allowed.'" *Id.* at 1183 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). "It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (citing *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983))

# ANALYSIS

The Santa Clara defendants move to dismiss, and the court dismisses, the amended complaint because the claims are barred by the *Rooker–Feldman* doctrine, Ms. Feng has not stated a valid claim for municipal liability under *Monell*, and she has not stated a valid RICO claim.[50]

## 1. Ms. Feng's Claims are Barred by the *Rooker–Feldman* Doctrine

"The *Rooker–Feldman* doctrine instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). "The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Id.* (citing *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)). "'It is a forbidden de facto appeal under *Rooker–Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court.'" *Id.* at 778 (*quoting Noel*, 341 F.3d at 1163). "A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal." *Noel*, 341 F.3d at 1158. "As part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Id.* "[A] federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Cooper*, 704 F.3d at 779 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S., 1, 25 (1987) (Marshall, J., concurring)).

Here, Ms. Feng's claims are "inextricably intertwined" with her child-custody proceedings in state court because she is asking the court to disturb the state court's custody decision and return

---

[50] Mot. – ECF No. 82. Ms. Feng's amended complaint has claims for a "violation of 42 U.S.C. § 1983" and a "violation of fourteenth amendment." *See* FAC – ECF No. 44-2 at 3–4 (¶¶ 128–131) As the court previously explained, Section 1983 is not itself a source of substantive rights. *See* Order – ECF No. 41 at 11, n. 48.

her children to her.[51] Moreover, the core of her amended complaint is that the Santa Clara defendants (namely, Ms. Alvarez and Mr. Hawkinson) lied and conspired with the state court judge and Ms. Feng's court-appointed attorney to remove her children from her custody.[52] Under similar circumstances, a court has found a plaintiff's § 1983 suit against social workers and the county alleging illegal removal of his children to be barred by the *Rooker–Feldman* doctrine. *See Tali v. Liao*, 18-cv-00330-LHK, 2018 WL 5816171, at *3–4 (N.D. Cal. Nov. 5, 2018) (plaintiff alleged that the defendants "conspired and lied to illegally remove [his] child from his care and sought "general and punitive damages, as well as injunctive relief"; the court dismissed with prejudice because the plaintiff's "allegations of Defendants' purported misconduct are inexorably intertwined with the state court custody decision [] [such that] 'adjudication of the federal claims would undercut the state ruling'") (internal citation omitted).

The *Rooker–Feldman* doctrine therefore bars Ms. Feng's claims against the Santa Clara defendants.[53]

### 2. Ms. Feng Does Not Plead Municipal Liability Against the County

In addition, Ms. Feng also has not pleaded a claim against the County. The court explained previously that to state a claim against a government entity, Ms. Feng must plead that the County maintained a policy or custom that resulted in the underlying constitutional violation.[54] *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). At most, Ms. Feng alleges that the County

---

[51] *See* FAC – ECF No. 44-2 at 5 (seeking as relief the "return[] [of] Plaintiff's four children, LF, KF, EF, & RF, as soon as possible").

[52] *See id* – ECF No. 44 at 7–8 (¶ 22) (alleging that Ms. Alvarez "lied about LF, KF, & EF being home by themselves"), 9 (¶ 26) (alleging that Mr. Tan submitted to the "false petition" from Mr. Hawkinson, Ms. Alvarez, and Dr. Piotrowski without Ms. Feng's authorization), (¶ 27) ("Federal defendants Tan and Hawkinson, with the help of the judge, Amber Rosen, continue to disregard anything Plaintiff said and continue to force the separation of vital care to LF, KF, MF and RF; and forced them into inhumane shelters and abusive foster homes"), 11 (¶ 34) (alleging that Mr. Hawkinson "doctored" court petitions).

[53] Given this bar, the court does not reach the Santa Clara defendant's argument that Ms. Feng failed to allege that Ms. Alvarez participated in the removal of the children and failed to allege Mr. Hawkinson's material fraudulent conduct.

[54] *See* Order – ECF No. 41 at 13–14.

"failed in their duty to investigate the alleged malpractice of a psychiatrist, federal defendant Patrowsky [*sic*], in which the plaintiff also claims unethical treatment based on NO diagnosis."[55] This is insufficient. *See Plumeau v. Sch. Dist. #40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (To state a municipal liability claim under § 1983, a plaintiff must show (1) she had a constitutional right of which she was deprived, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy is the moving force behind the constitutional violation). Ms. Feng does not plead an underlying violation, and she does not state a *Monell* claim.

### 3. Ms. Feng Does Not Plead a Cognizable RICO Claim

Lastly, to state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 U.S.C. § 1964(c)). Ms. Feng has not pleaded injury to her business or property resulting in any concrete financial loss, and thus — as the court said in her earlier orders — she does not state a claim.[56]

## CONCLUSION

The court grants the pending motion to dismiss. Because amendment would not cure the complaint's deficiencies, the dismissal is with prejudice.

This disposes of ECF No. 82.

**IT IS SO ORDERED.**

Dated: May 14, 2020

_____
LAUREL BEELER
United States Magistrate Judge

---

[55] FAC – ECF No. 44 at 9 (¶ 28).

[56] *See* Order – ECF No. 41 at 14–15; Order – ECF No. 80 at 10.

ORDER – No. 19-cv-06877-LB                    10